# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MANUFACTURERS LIFE INSURANCE COMPANY PREMIUM LITIGATION | CASE NO. 96CV230 BTM (AJB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ENFORCE INJUNCTION** |

Defendant John Hancock Life Insurance Company, successor to The Manufacturer's Life Insurance Company ("Insurance Company"), filed a motion to enforce the terms of a Manufacturer's Life class action settlement that was previously approved by this Court. Specifically, Defendant seeks to enjoin certain class members from bringing claims against the Insurance Company that were allegedly released as a part of the class settlement. For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART the Insurance Company's motion.

## BACKGROUND

On December 21, 1998, this Court awarded final judgment in the Manufacturer's Life class action lawsuit. The plaintiffs in this lawsuit alleged that Manufacturer's Life misrepresented financial information relating to its policies to induce buyers to purchase policies. Specifically, plaintiffs complained of misrepresentations and omissions of information made in the course of selling insurance policies which included a "vanish" point i.e. "the time at which future dividends on a policy, paid-up cash values, or other policy

assets would collectively suffice to pay future premiums as they came due." (Docket No. 95 Memo Approving Settlement, at 2) Plaintiffs also alleged that Manufacturer's Life trained its agents to provide these misrepresentations and to use common marketing materials and illustrations including misleading information regarding these vanishing premium policies.

The parties reached a settlement which the Court concluded was fair, adequate and reasonable. In the final judgment approving the class settlement, the Court retained jurisdiction as to all matters relating to the enforcement and interpretation of the settlement agreement.

The final judgment defined the class members as "all persons . . . who have or had on or before June 19, 1998, an ownership interest in one or more individual [relevant] policies . . . issued by the Manufacturer's Life Insurance Company through its United States individual insurance operations from January 1, 1982 through December 31, 1993." Unless these class members opted out, they would be bound by the terms of the settlement agreement.

As part of this settlement agreement, the class members released:

> any and all past or presently existing Claims, including known, unknown, suspected or unsuspected, that are based upon, related to, or directly connected with, in whole or in part, the allegations and subject matters referred to in the Complaint or the Released Transactions . . .

The term "Released Transactions" was defined as:

> any and all acts, communications, omissions, or nondisclosures relating to or connected with the marketing, solicitation, application, sale, purchase, operation or retention of the Policies, based upon the following:
>
> (1) Policy illustrations, marketing materials or sales presentations setting forth a single, fixed limited number of out-of-pocket premium payments based on then-current, non-guaranteed assumptions about dividend scales, interest crediting rates, policy credits, administration charges, contract charges and/or cost of insurance to purchase, maintain and keep the Policy in force throughout the insured's life, or for a specified period of time beyond the number of premium payments illustrated, promised or represented, without a reduction in the Policy's death benefits;
>
> (2) a concept under which a Policy's required premiums or charges may be paid out of its current and/or accumulated values, as those premiums or administration charges, contract charges or costs of insurance became due;
>
> (3) the ability of Plaintiffs and the Class Members to keep the Policies in force based on a fixed number and/or amount out-of-pocket premium payments;

    (4)    the dollar or monetary amount that would be accumulated or paid under a Policy based on a fixed number and/or amount of out-of-pocket premium payments;

    (5)    Defendants' policies and practices with respect to dividends, account values, policy loans, credited interest rates, cost of insurance, administrative charges, contract charges and/or other Policy or premium charges, account value calculations, lapse supported pricing or death benefit;

    (6)    the cost of term-rider coverage on the Policy relative to Policy coverage, the affect of term rider coverage on the cost of the Policy and the ability of Policies with term rider premiums to offset or vanish in future years;

    (7)    the Deferred Acquisition Cost statutory accounting charge;

    (8)    the use of direct recognition of Policy loans in the calculation of Policy benefits, dividends, interest crediting rates and/or costs;

    (9)    the manner in which Defendants trained and supervised any of the Releasees, including, but not limited to, Defendants' general agents, agents, branch managers, Producers, brokers, or any of them, relating to the allegations set forth in the Complaint, or the Released Transactions set forth in items (1) through (8) above.

    d. Released Transactions does not include claims for replacement, sale of life insurance as retirement, savings, pension or other investment plans, servicing, administration, forgery or theft.

On March 13, 2008, John and Harriet Maloof (the "Maloofs") sued Defendant John Hancock and Parker Glasgow, an insurance sales agent, in Alabama state court. The Maloofs allege that Glasgow wrongfully induced them to buy two insurance policies in 1989 and another policy with a term rider in 1992. Specifically, the Maloofs allege that Glasgow made the following misrepresentations: (1) that surrendering five existing policies to fund the purchase to two new policies was in their best financial interest; and (2) the benefits from these new policies would pay estate taxes upon Mr. Maloof's death. The Maloofs also allege that Glasgow failed to mention the following pertinent information: (1) the 1989 policy was projected to lapse at age 78 or 79; (2) the policy would be unaffordable in later years; (3) the contract charges were significant; (4) the purchase of these new policies were not in the financial best interests of the Maloofs; and (5) the benefits of these policies would not be able to pay estate taxes if Mr. Maloof lived beyond age 78. The Maloofs also generally allege that Defendant John Hancock is liable for the "negligent, fraudulent and other wrongful acts" of Glasgow.

**DISCUSSION**

The Insurance Company seeks an order from this Court enjoining the action brought against it by the Maloofs in Alabama state court on the ground that this action is barred by the Manufacturer's Life settlement agreement. The All-Writs Act, 28 U.S.C. § 1651, empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." The Anti-Injunction Act, 28 U.S.C. § 2283 clarifies that:

> A Court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Pursuant to these acts, federal courts may enjoin state court proceedings to protect the *res judicata* effect of their judgments. Charlton v. Estate of Charlton, 841 F.2d 988, 989 (9th Cir. 1988).

Accordingly, this Court is empowered to enjoin the Maloofs' state court action to the extent that this action involves claims released as part of the Manufacturer's Life Settlement. The Maloofs do not dispute that they were members of the Settlement Class. According to the terms of the Manufacturer's Life Settlement Agreement, the class members released only claims related to the allegations in the Complaint or those related to "Released Transactions." The allegations of the class action complaint are based on misrepresentations in connection with the vanish point scheme as described above and do not appear to encompass general misrepresentations regarding financial advisability and affordability, lapse dates, or policy benefits. Furthermore, the allegations in the class action complaint are not broad enough to include the claims made in the Maloofs' complaint.

Instead, Defendants argue that the Released Transactions should be construed broadly to encompass all communications regarding the marketing, sale, and purchase of Insurance Company's policies. Contrary to Defendants' contentions, the Released Transactions are more limited in scope and are defined as "communications, omissions, non-disclosures" based on specifically enumerated practices and policies such as the "vanish" point scheme (items 1-4 in the definition of Released Transactions); costs of term rider coverage (item 6); the Deferred Acquisition Cost statutory accounting charge (item 7);

the use of direct recognition of Policy loans in the calculation of Policy benefits (item 8); and the training related to these policies and practices (item 9). The only released transaction that is broadly phrased is item number 5 which includes:

> Defendants' policies and practices with respect to dividends, account values, policy loans, credited interest rates, cost of insurance, administrative charges, contract charges and/or other Policy or premium charges, account value calculations, lapse supported pricing or death benefit.

The Maloofs, on the other hand, do not allege claims based on the vanish point scheme. In their complaint, the Maloofs allege general misrepresentations about the desirability and the terms and conditions of the policies that they purchased including (1) the advisability of replacing existing policies to fund new policies; (2) the projected benefits; (3) the projected lapse dates; (4) affordability; and (5) the significant contract charges associated with these new policies.

Upon comparing the Maloofs' claims to the definition of the Released Transactions in the settlement agreement, the Court concludes that the only overlap occurs with the Maloofs' claims of misrepresentation regarding significant contract charges. Because item 5 of the definition of "Released Transactions" specifically includes contract charges, the Maloofs are precluded from alleging this released claim.

The Maloofs are therefore enjoined from proceeding against the Insurance Company on a claim that the contract charges were misrepresented to them. The remainder of the Maloofs' claims, however, centering around the wrongful replacement of existing policies with new policies and the misrepresentations regarding their affordability, benefits and terms and conditions were not released in the Manufacturer's Life Class Settlement. The Maloofs may therefore proceed with these claims in Alabama State Court.

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendant John Hancock Life Insurance Company's motion to enforce permanent injunction and class action settlement [Doc 163]. The Maloofs are enjoined from proceeding against the Insurance Company in Alabama state court on the claim that the contract charges were misrepresented to them. The Maloofs may proceed with the remainder of their claims that were not released as part of the Manufacturer's Life Class Settlement.

The Court also grants the parties motion to substitute counsel [Doc. 164].

**IT IS SO ORDERED.**

DATED: November 18, 2008

_____
Honorable Barry Ted Moskowitz
United States District Judge